| Summons | CIVIL DOCKET NO.<br>2384CV00977 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|
| CASE NAME:<br>Eagle & Anchor Svc., LLC<br>Plaintiff(s)<br>vs.<br>Painters and Allied Trades District Council No. 35, Local 1952<br>Defendant(s) | | John E. Powers, III, Acting Clerk of Courts<br>Suffolk Superior Civil County<br>COURT NAME & ADDRESS:<br>Three Pemberton Square<br>Boston, MA. 02108 |

THIS SUMMONS IS DIRECTED TO **Painters and Allied Trades District Council No. 35, Local 1952** (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this Summons and the original Complaint has been filed in the **Suffolk Superior** Court.
**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

**1. You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the Court may decide the case against you and award the Plaintiff everything asked for in the Complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

**2. How to Respond.**

To respond to this lawsuit, you must file a written response with the Court **and** mail a copy to the Plaintiff's attorney (or the Plaintiff, if unrepresented). You can do this by:

  a) Filing your **signed original** response with the Clerk's Office for Civil Business, **Suffolk Superior** Court **Three Pemberton Square, Boston, MA 02108** (address), by mail, in person, or electronically through the web portal www.eFileMA.com if the Complaint was e-filed through that portal, **AND**

  b) Delivering or mailing a **copy** of your response to the Plaintiff's attorney/Plaintiff at the following address: **Alexander R. Zwillinger, Kenney & Sams P.C., 144 Turnpike Rd., Suite 350, Southborough, MA 01772**

**3. What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court. If you have any claims against the Plaintiff (referred to as "counterclaims") that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Court no more than 10 days after sending your Answer.

**3. (cont.)** Another way to respond to a Complaint is by filing a "Motion to Dismiss," if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Rule 12 of the Massachusetts Rules of Civil Procedure**. If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at:

www.mass.gov/law-library/massachusetts-superior-court-rules

### 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

### 5. Required Information on All Filings.

The "Civil Docket No." appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Heidi E. Brieger , Chief Justice on May 3 , 20 23 . (Seal)

Acting Clerk

**Note:** The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s).

---

PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ , I served a copy of this Summons, together with a copy of the Complaint in this action, on the Defendant named in this Summons, in the following manner (See Rule 4(d)(1-5) of the Massachusetts Rules of Civil Procedure):

_____

_____

_____

Dated: _____                    Signature: _____

**N.B. TO PROCESS SERVER:**

**PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

A TRUE COPY ATTEST

Date: 5/16/2023

Process Server & Disinterested Person

rev. 7/2022

*1*

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT DEPT.
OF THE TRIAL COURT
CIVIL ACTION NO. 23-977-B

EAGLE & ANCHOR SERVICES, LLC

Plaintiff,

v.

PAINTERS AND ALLIED TRADES
DISTRICT COUNCIL NO. 35, LOCAL
1952

Defendant.

## COMPLAINT AND JURY DEMAND

### NATURE OF CASE

1. The Plaintiff, Eagle & Anchor Services, LLC ("Eagle & Anchor"), a drywall contractor, brings this action against Painters and Allied Trades District Council No. 35, Local 1952 ("DC 35)") concerning a construction project at Washington Village located at 235 Old Colony Avenue in South Boston (the "Project"), which is owned by Washington Village Phase I Property Owner, LLC ("Owner"), and on which Dimeo Construction Company ("Dimeo") was the general contractor.

2. The Project was originally presented to Eagle & Anchor as an open shop project, meaning it would not require Eagle & Anchor to exclusively use union labor.

3. Nevertheless, an agent for DC 35 promised to provide Eagle & Anchor with union drywall taping labor at relatively lower "residential rates."

4. When Eagle & Anchor's non-union subcontractor began performing drywall taping work, Dimeo complained that Eagle & Anchor could only use union labor according the terms of its prime contract with the Owner.

5. When Eagle & Anchor approached DC 35 to provide the union tapers at the promised residential rates, however, DC 35 refused, instead demanding relatively higher "commercial rates."

6. As a result of Eagle & Anchor's reasonable reliance of DC 35's promise, it suffered significant damages far in excess of $50,000.

## THE PARTIES

7. The Plaintiff, Eagle & Anchor Services, LLC, is a Rhode Island corporation with its principal place of business located at 1 Felix Mirando Way, Providence, RI 02940.

8. The Defendant Painters and Allied Trades District Council No. 35, Local 1952 is an unincorporated association and an employee organization which is administered at 25 Colgate Road, Suite 204 in Roslindale, Massachusetts.

## FACTS

9. The Project is a large mixed-use project in Andrew Square, South Boston calling for the construction of a new 7 story building.

10. The Project has been contemplated and discussed since at least 2015, with multiple general contractors, including Dimeo, vying for the opportunity to oversee the Project.

11. At no time during the planning and approval process did the Owner, Dimeo or anyone else announce that this would be an exclusively union project.

12. In March 2021, Dimeo sent Eagle & Anchor an initial bid package with drawings and specifications based on a guaranteed maximum price.

2

13. Nothing in these early documents stated this was an exclusively union job and Dimeo did not describe it that way in its communications with Eagle & Anchor.

14. On or around April 20, 2021, Dimeo issued additional documents as part of a drywall bid package that covered all labor and materials for the light gauge metal framing, batt insulation, gypsum wallboard and taping for the Project.

15. These documents included as "Exhibit A," a Scope of Work/Contract Price Details sheet with a list of 57 items relating to the key pricing considerations for the Project.

16. Even though Dimeo would typically call out whether a project is slated to use exclusively union labor in this sort of document, nothing in the April 20, 2021 Exhibit A says anything of the sort.

17. Before bidding on the Project, Eagle & Anchor's Jesse Carr had a conversation with DC 35's Jorge Rivera to discuss the possibility of using union tapers from DC 35 for some of the work on the Project.

18. Mr. Carr explained that it was his understanding that the Project did not exclusively require union labor and they discussed whether and under what terms DC 35 could provide tapers under union residential rates as opposed to finding non-union alternatives.

19. Mr. Carr knew from prior experience with DC 35 that the union could provide labor under those terms for projects like this one and in fact had worked on a project for Dimeo in which DC 35 agreed to that exact arrangement.

20. Mr. Carr shared the details of the Project with Mr. Rivera, who was familiar with it and the bidding parameters.

3

21. At the end of the conversation, Mr. Rivera expressly and unambiguously told Mr. Carr that DC 35 would provide the necessary manpower to complete the taping work for the Project and that it would charge the union residential rates for the work.

22. Then, over the next several months during the bidding process, Mr. Carr had multiple additional conversations with Mr. Rivera by phone, text message and in person during which Mr. Rivera reaffirmed that promise.

23. Indeed, at no time during 2021 did Mr. Rivera or anyone else from DC 35 suggest that it would charge a different rate or refuse to provide the necessary manpower.

24. On or around July 30, 2021, Eagle & Anchor submitted its final bid for the Project based on the residential rates promised by Mr. Rivera on behalf of DC 35.

25. Eagle & Anchor and Dimeo signed a Trade Contractor Agreement (the "Subcontract") dated October 7, 2021.

26. Although the Subcontract provides that the prime contract between Dimeo and the Owner is part of the contract documents between Dimeo and Eagle & Anchor, Dimeo did not provide a copy of the prime contract to Eagle & Anchor at the time of contracting.

27. Moreover, even though the prime contract between Dimeo and the Owner requires that all labor employed on the project to be union, Dimeo did not share that fact with Eagle & Anchor, suggest Eagle & Anchor review or revise its bid, or confirm that Eagle & Anchor could deliver the work described in its proposal with that additional requirement.

28. Beginning in August 2022, Eagle & Anchor had several tapers on site working on fire taping and other finish taping.

29. Even though these workers were non-union, Dimeo allowed them to work on the Project for nearly three months without issue.

4

30. Upon information and belief, it was only after someone from DC 35 complained that Dimeo directed Eagle & Anchor to remove all non-union tapers from the site.

31. Since that time, Eagle & Anchor has been using union tapers from DC 35 and paying them the higher rate under protest.

32. Despite its promises upon which Eagle & Anchor reasonably relied, DC 35 refused to provide union tapers at the residential rates, which has cost Eagle & Anchor hundreds of thousands of dollars in monetary damages.

## COUNT I: PROMISSORY ESTOPPEL

33. Eagle & Anchor repeats and restates all preceding paragraphs as if specifically set forth herein.

34. DC 35 made promises including, without limitation, to provide union labor on the Project through Eagle & Anchor at the relatively lower "residential rates."

35. DC 35's promises caused Eagle & Anchor's action or forbearance.

36. Injustice can be avoided only by enforcement of the promises.

37. DC 35's conduct has caused Eagle & Anchor to incur substantial damages.

## COUNT II: UNJUST ENRICHMENT

38. Eagle & Anchor repeats and restates all preceding paragraphs as if specifically set forth herein.

39. Eagle & Anchor has overpaid DC 35 laborers a higher than agreed rate for labor on the Project, which in turn benefited DC 35 through additional dues, financial contributions, and in other ways, conferring a benefit on DC 35 by Eagle & Anchor to which it was not entitled.

40. DC 35 appreciated and knew of the benefit conferred by Eagle & Anchor.

41. DC 35 has accepted or retained the benefit under circumstances which make such acceptance or retention inequitable.

42. DC 35's conduct has caused Eagle & Anchor to incur substantial damages.

### COUNT III: VIOLATIONS OF M.G.L. CHAPTER 93A, SECTION 11

43. Eagle & Anchor repeats and restates all preceding paragraphs as if specifically set forth herein.

44. DC 35 is a "person" as that term is defined in M.G.L. ch. 93A, § 1.

45. DC 35 is engaged in "trade" or "commerce" in the Commonwealth as those terms are defined in M.G.L. ch. 93A, § 1.

46. DC 35's conduct with respect to Eagle & Anchor, including but not limited to taking advantage of the fact the Project required union labor to charge higher rates than it had previously promised knowing that Eagle & Anchor had no choice but to use DC 35 laborers or risk defaulting under the Subcontract, constituted unfair and deceptive acts and practices within the meaning of M.G.L. ch. 93A, §§ 2 and 11.

47. DC 35's violation of M.G.L. ch. 93A, §§ 2 and 11 was knowing and willful.

48. As a result of DC 35's unfair and deceptive acts and practices, Eagle & Anchor has suffered damages including but not limited to the difference between what Eagle & Anchor has paid DC 35 union tapers and the amount it would have paid under the "residential rates."

### REQUESTS FOR RELIEF

WHEREFORE, Eagle & Anchor respectfully requests that the Court:

a. Enter judgment for Eagle & Anchor on all claims asserted herein;

b. Award damages, multiple damages, attorneys' fees, interest, and costs; and

c. Award such other relief as the Court deems just and proper.

## JURY DEMAND

Eagle & Anchor demands a trial by jury on all issues so triable.

                                           Respectfully submitted,
                                           EAGLE & ANCHOR SERVICES, LLC,
                                           By its attorneys,

                                           */s/ Alexander R. Zwillinger*
                                           Michael P. Sams, BBO #567812
                                           mpsams@KSlegal.com
                                           Alexander R. Zwillinger, BBO #687078
                                           arzwillinger@KSlegal.com
                                           KENNEY & SAMS, P.C.
                                           144 Turnpike Road, Suite 350
                                           Southborough, MA 01772
                                           Tel.: (508) 490-8500

Dated: April 27, 2023

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| | | COUNTY Suffolk Superior Court (Boston) |

| Plaintiff | Eagle & Anchor Services, LLC | Defendant: | Painters and Allied Trades District Council No. 35, Local 1952 |
|---|---|---|---|
| ADDRESS: | 1 Felix Mirando Way, Providence RI 02940 | ADDRESS: | |

| Plaintiff Attorney: | Alexander R. Zwillinger | Defendant Attorney: | |
|---|---|---|---|
| ADDRESS: | Kenney & Sams, P.C. | ADDRESS: | |
| 144 Turnpike Road, Suite 350 | | | |
| Southborough, MA 01772 | | | |
| BBO: | 687078 | BBO: | |
| Plaintiff Attorney: | Michael P. Sams | Defendant Attorney: | |
| ADDRESS: | Kenney & Sams, P.C. | ADDRESS: | |
| 144 Turnpike Road, Suite 350 | | | |
| Southborough, MA 01772 | | | |
| BBO: | 567812 | BBO: | |

**TYPE OF ACTION AND TRACK DESIGNATION** (see instructions section on next page)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A01 | Services, Labor & Material | F | ☒ YES ☐ NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?   ☒ YES   ☐ NO          Is there a class action under Mass. R. Civ. P. 23?   ☐ YES   ☒ NO

**STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

**TORT CLAIMS**

A. Documented medical expenses to date
   1. Total hospital expenses _____
   2. Total doctor expenses _____
   3. Total chiropractic expenses _____
   4. Total physical therapy expenses _____
   5. Total other expenses (describe below) _____

   _____

                                                      Subtotal (1-5): $0.00

B. Documented lost wages and compensation to date _____
C. Documented property damages to date _____
D. Reasonably anticipated future medical and hospital expenses _____
E. Reasonably anticipated lost wages _____
F. Other documented items of damages (describe below) _____

   _____

                                                      TOTAL (A-F): $0.00

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

   _____

**CONTRACT CLAIMS**

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | Promissory Estoppel, unjust enrichment, Chapter 93A, Section 11, Money had and received, | $50,000 + |
| | Total | |

| Signature of Attorney/Self-Represented Plaintiff: X  *[signature]* | Date: April 26, 2023 |

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION UNDER S.J.C. RULE 1:18(5)

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney: X  *[signature]* | Date: April 26, 2023 |